UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

EFRAIN CAMARILL CRUZ,

          Petitioner,

v.                              Case No. 5:16-cv-531-Oc-39PRL

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

          Respondents.

_____

## ORDER

### I. Introduction

Petitioner, Efrain Camarill Cruz, a former detainee of the Citrus County Jail, proceeds on a petition for writ of habeas corpus under 28 U.S.C. § 2254, filed by counsel (Doc. 1; Petition). Petitioner challenges a 2013 Citrus County judgment of conviction. Respondents filed a response (Doc. 12; Response), and Petitioner's counsel replied (Doc. 22; Reply).[1]

Petitioner raises three grounds for habeas relief: (1) his guilty plea was not voluntary because of his mental illness, or alternatively, the ineffective assistance of counsel for failure to argue Petitioner was incompetent to enter a guilty plea and for

_____

[1] The Court will cite to the exhibits in the Appendix as "Ex." The Court will reference page numbers using the Bates stamps where provided (primarily for Ex. A). Otherwise, the document's internal page numbering will be used, not the Court's electronic docket system numbering.

failure to request a competency hearing under the Florida Rules of Criminal Procedure; (2) the ineffective assistance of counsel for failure to move to dismiss count four of the indictment; and (3) his convictions and sentence under Florida Statutes sections 847.0135(3)(a) and (4)(a) violate double jeopardy principles. Petition at 10, 17, 18.

## II. Procedural History

Petitioner, a Mexican citizen, was convicted on August 19, 2013, and sentenced to serve 90 days in the county jail followed by three years of probation with possible deportation. Petition at 1. As of the date of this Order, Petitioner completed his sentence. However, when Petitioner filed his Petition, on August 19, 2016, he met the "custody" requirement under § 2254 because his probationary term had not expired. Id. It appears Petitioner faces a possible collateral consequence related to his conviction because he alleges he was subject to deportation as a result. Id.

Petitioner was arrested on June 22, 2012, following an undercover operation. Ex. A at 27. According to the probable cause affidavit, Petitioner used his "email account to seduce, solicit, lure or entice or attempt to seduce, solicit, lure or entice a parent of a child to commit any illegal sex act." Id. at 28. An undercover agent, Deputy Phil Graves, posing as an adult single mother, posted an advertisement online, titled "ready for training–W4M." Id. That same day, Petitioner responded to the

2

advertisement using an online email service. _Id._ Deputy Graves responded immediately and identified the child as a 13-year-old girl. _Id._ Petitioner exchanged numerous text messages with whom he thought was the parent of the child. _Id._ The two also exchanged pictures through email. _Id._ Petitioner spoke by phone with the supposed parent and the supposed daughter, talking to the daughter about engaging in sex acts with her. _Id._ at 28-29. Deputy Graves provided Petitioner an address and the two arranged to meet. _Id._ at 29. When Petitioner arrived, officers arrested him, confiscating two cell phones and a thumb drive device, each of which was believed to contain pertinent information. _Id._ at 59, 66.[2] After being read his rights, Petitioner stated he made a mistake. _Id._

On July 16, 2012, Petitioner was charged by Information with four counts: (1) use of the internet or device to lure a child identified as Tiffany Wright; (2) use of the internet or device to lure the parent of a child; (3) traveling to meet a minor, identified as Jenny,[3] for illegal sexual conduct; and (4) attempted lewd/lascivious battery on a child identified as Jenny. _Id._ at 38.

---

[2] A search warrant subsequently was issued and executed for the devices. Ex. A at 64-68.

[3] The Information references two fictitious minors: Tiffany Wright and Jenny. Ex. A at 38. The parties do not dispute Petitioner believed there was only one minor involved. It is unclear why two different names are referenced in the Information.

On August 19, 2013, Petitioner entered a guilty plea as "an open plea to the Court," not as a result of a plea negotiation with the prosecutor. Id. at 3, 4. After Petitioner was sworn in, Petitioner's attorney, Mr. Grant, informed the trial judge he spoke with Petitioner prior to the proceedings to explain the terms of the plea, including the sentence:

> MR. GRANT: Mr. Cruz, Judge, for the record, reads and writes English, is extremely articulate. He, in addition to that, Your Honor, did acquire his GED and one year of college. He's been in the United States for 16 years. I have, Judge, in this case, we have not taken any depositions . . . because Mr. Cruz, through the decision-making process, has agreed to take the deal that the State of Florida – well, that the court is going to offer.[4]
>
> . . . .
>
> Specifically, Your Honor, we discussed it, I gave him my professional opinion, the likelihood of success at trial which was limited in this case. There are post-Miranda admissions written and oral. There were text messages, there were – the government had a very strong case
>
> . . . .
>
> I want to make sure that I have advised Mr. Cruz that as a foreign national, it is my opinion that he will be deported from the

---

[4] Petitioner's plea was not negotiated with the prosecutor. As such, there was no written plea agreement. Ex. A at 3. Defense counsel stated the plea was the result of "a judge's conference" at which the parties seemingly discussed whether Petitioner would change his plea in exchange for "90 days, three years, standard probation." Id.

United States upon . . . entering of the plea
of guilty.

. . . .

I want to make it abundantly clear that my
client understands that, is prepared to go to
Mexico if the United States government does,
in fact, deport him.

Id. at 5-6. Mr. Grant also informed the judge the following:

Your Honor, we have discussed that [my client
is] waiving his right to a jury trial, waiving
the right to confront witnesses, waiving his
right to an appeal other than for any legal
[sic] sentence, that he has waived – that he's
going to be getting DNA from the Court, and
that he's waiving all his other constitutional
rights that relate to a jury trial and the
right to confront witnesses and challenge the
witnesses and the evidence that the government
may present against him. In light of that,
we're here to change our plea today, enter a
plea of guilty, receive 90 days in the Citrus
County Jailhouse and three years standard
probation.

Id. at 9.

Upon receiving Mr. Grant's assurances that Petitioner wished
to enter a guilty plea understanding the implications and potential
consequences, the judge engaged Petitioner in the following
exchange:

THE COURT:      Mr. Cruz, you heard your
attorney's representations. Is that how you
want to handle this matter?

THE DEFENDANT: Yes, sir.

THE COURT:      Are you presently under
the influence of any alcohol or intoxicant

that would negatively affect your good judgment here today?

THE DEFENDANT: No, sir.

THE COURT: Have you ever been found to be insane, incompetent, or mentally challenged?

THE DEFENDANT: No, sir.

THE COURT: Okay. Are you comfortable in the English language?

THE DEFENDANT: Yes, sir.

THE COURT: Have you been able to understand everything I've said in English as well as what [your attorney] has said in English?

THE DEFENDANT: Yes, I did, sir.

THE COURT: Very good. Now, then, Mr. Cruz, you heard about your situation regarding your immigration status, residency status, and/or likely deportation status. Do you understand that this plea could and likely would subject you to deportation by the federal authorities, you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: [A] guilty plea is one saying that I am guilty of this offense, that you heard your attorney indicate the rights you're giving up. Do you need me to go over each one of those rights individually like he's already done in your presence?

THE DEFENDANT: No, sir.

Id. at 10-11.

The trial judge then stated the factual predicate for the plea, as follows:

> Mr. Cruz, the facts of the case would tell me
> that on or about June the 22nd, of 2012 . . .
> you did knowingly utilize a computer online
> service, Internet service, local bulletin
> board, or other electronic status storage
> device to seduce, solicit, lure, entice a
> Tiffany Wright believed by you, Mr. Cruz, to
> be a child to commit an illegal act as defined
> by Florida [laws], this by conversing or
> chatting or sending emails or messages to this
> person.

Id. at 11-12.

The judge further explained Petitioner communicated with someone Petitioner believed to be the parent of the child to solicit the parent's consent for the child to participate in an illegal act. Id. at 12. The judge explained Petitioner traveled some distance "to conduct sexual contact with Jenny or Tiffany or somebody else utilizing this electronic data storage matter," and explained:

> In other words, you traveled for the purpose
> of having sex with Jenny and that further on
> or about this same date, that you did attempt
> to engage in sexual activity with Jenny who
> was believed by you to be a person over the
> age of 12 but less than 16, this [sic] by
> attempting to have sexual contact . . . .

Id. at 13.

After setting forth the factual predicate, the judge explained to Petitioner that Mr. Grant was not appointed as Petitioner's immigration attorney and reiterated Petitioner's plea may result in his deportation. Id. at 14. The judge said:

> If you are, in fact, deported, you can't come
> back later on and say that Mr. Grant has done
> anything improper or has given you bad advice
> or anything. He's given you the best that he
> has and you know your situation. Is that
> correct, Mr. Cruz?

Id. Petitioner responded, "Yes, sir."[5] The judge explained to

Petitioner his guilty plea would result in the waiver of certain

rights:

> So you're forever waiving your rights to
> appeal or challenge any of the facts of this
> case as we've already discussed the facts of
> the case or any legalities of any decisions
> that have already been made by me and of
> course, you still have the right to, you know,
> have an immigration hearing . . . . You
> understand that?

Id. at 14-15. Petitioner responded, "Yes, sir." Id. at 15.

Petitioner agreed Mr. Grant "answered all of [his] questions to

complete and utter satisfaction," and Mr. Grant confirmed

Petitioner was "competent." Id. The judge explained Petitioner

would be designated a sexual offender and would be subject to the

requirements of the Jimmy Ryce and Lunsford Acts. Id. at 19-20.

The judge accepted Petitioner's plea of guilty, finding it "freely

and voluntarily entered into after knowing waiver of rights" and

after the factual basis was established. Id. at 17.

---

[5] Notably, Petitioner's immigration attorney was present in
the courtroom when Petitioner entered his guilty plea. Ex. A at
23.

Petitioner, through counsel, filed a direct appeal, id. at 82, which he voluntarily dismissed, Ex. B. Petitioner's counsel then filed a motion under Florida Rule of Criminal Procedure 3.850 requesting the trial court vacate Petitioner's judgment. Ex. D-5. The trial court denied the 3.850 motion. Ex. D-3; Ex. G.[6] Petitioner appealed the trial court's ruling. Ex. H. On August 18, 2015, the appellate court affirmed without opinion. Ex. M. The appellate court denied Petitioner's motion for rehearing on September 2, 2015, Ex. O, and the mandate issued on October 8, 2015, Ex. P.

### III. Timeliness & Exhaustion

Respondents assert the Petition appears to have been timely filed[7] and the claims have been exhausted in state court except for one portion of ground one. See Response at 9, 11. Respondents contend "the portion of claim one relying on 'Exhibit A' . . . has not been exhausted in state court," due to Petitioner's failure to present a copy of the exhibit. Id. at 11. Exhibit A is a letter from a neuropsychologist, Dr. Ginart, who evaluated Petitioner at the request of Petitioner's lawyer in furtherance of his postconviction proceedings. See Petition at 10, 26. Petitioner

---

[6] The trial court issued two orders on the 3.850 motion. Ex. D-3; Ex. G. On the day the court issued the first order, it reserved ruling on one claim and directed the state to respond to that claim. Ex. D-2. After the state responded, the trial court issued a final order. Ex. G.

[7] For purposes of this Order, the Court construes the Petition as timely filed.

asserts Florida law does not require him to have provided the exhibit to the state court because he referenced Dr. Ginart's opinion in his 3.850 motion. Reply at 3-4.

Upon review of the record, the Court finds Petitioner's position is well-founded. In his 3.850 motion, Petitioner asserted he suffered a mental illness, and his counsel referenced the neuropsychologist's opinion, stating "Dr. Ginart has concluded [Petitioner] was incompetent to enter a guilty plea." Ex. D-5 at 6. Petitioner was not required to attach the written opinion to his motion. See Mann v. State, 21 So. 3d 894, 895 (Fla. 2d DCA 2009) (recognizing Florida law does not require a prisoner to support his sworn motion with evidence). The Court concludes Petitioner has exhausted all claims in his Petition. Accordingly, in analyzing ground one, the Court will consider, to the extent relevant, the exhibit Plaintiff attaches to his Petition.

## IV. Evidentiary Hearing

Petitioner requests an evidentiary hearing on grounds one and two. See Petition at 14, 15, 18. Petitioner has the burden to establish the need for a federal evidentiary hearing. Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). A district court is not required to hold an evidentiary hearing if the record refutes the asserted factual allegations or otherwise precludes habeas relief. A petitioner fails to demonstrate an

evidentiary hearing is warranted based upon conclusory allegations. Id. at 1061.

In determining whether an evidentiary hearing is warranted, a federal court should take into consideration the deferential standards of federal habeas review under § 2254. Schriro v. Landrigan, 550 U.S. 465, 474 (2007). "Therefore, before a habeas petitioner may be entitled to a federal evidentiary hearing . . . he must demonstrate a clearly established federal-law error or an unreasonable determination of fact on the part of the state court, based solely on the state court record." Landers v. Warden, Atty. Gen. of Ala., 776 F.3d 1288, 1295 (11th Cir. 2015).

After a thorough review of the record, the Court finds Petitioner fails to carry his burden to demonstrate the need for an evidentiary hearing. The Court finds the pertinent facts are fully developed in this record or the record otherwise precludes habeas relief. Consequently, this Court can "adequately assess [Petitioner's] claim[s] without further factual development." Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003).

## V. Standard of Review

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs a state prisoner's federal petition for habeas corpus. See § 2254. "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error

11

correction.'" Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017) (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011)).

The first task of a federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. Marshall v. Sec'y Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for its decision to qualify as an adjudication on the merits. Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). Where the state court's adjudication on the merits is unaccompanied by an explanation, the district court should presume the unexplained decision adopted the reasoning of the lower court:

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Id. The presumption is rebuttable by a showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision. Id. at 1192, 1196.

When a state court has adjudicated a petitioner's claim on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d). The burden of proof is high; "clear error will not suffice." Virginia v. LeBlanc, 137 S. Ct. 1726, 1728 (2017). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." § 2254(e)(1).

As such, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 571 U.S. 12, 19 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe v. Warden, 834 F.3d 1323, 1338 (11th Cir. 2016), cert. denied, 137 S. Ct. 2298 (2017). (quoting Harrington v. Richter, 562 U.S. 86, 102-03 (2011)).

The AEDPA standard is intended to be difficult for a petitioner to meet. Richter, 562 U.S. at 102. A district court's obligation is to "train its attention" on the legal and factual

basis for the state court's ruling, not to "flyspeck the state court order or grade it." Meders v. Warden, Ga. Diagnostic Prison, 911 F.3d 1335, 1349 (11th Cir. 2019) (citing Wilson, 138 S. Ct. at 1191-92). A federal district court must give appropriate deference to a state court decision on the merits. Wilson, 138 S. Ct. at 1192. Appropriate deference requires the court to defer to the reasons articulated by the state, if they are reasonable. Id.

Petitioner asserts AEDPA's presumption of correctness does not apply because the trial court did not conduct an evidentiary hearing. Petition at 15, 18. In support of his contention, Petitioner cites three opinions from other circuits.[8] Petitioner provides no binding precedent holding that a state court's factual conclusions are not entitled to a presumption of correctness solely because the court reaches those conclusions without the benefit of an evidentiary hearing. In fact, the Eleventh Circuit has held an evidentiary hearing is not a prerequisite to trigger AEDPA's presumption of correctness, recognizing:

_____

[8] Alston v. Redman, 34 F.3d 1237 (3d Cir. 1994); Miller v. Champion, 161 F.3d 1249 (10th Cir. 1998), abrogation recognized by Smith v. Aldridge, 904 F.3d 874, 886 (10th Cir. 2018); and Valdez v. Cockrell, 288 F.3d 702 (5th Cir. 2002). Not only are these decisions not binding, one of the opinions upon which Petitioner relies is a dissent from a petition for rehearing en banc. See Valdez, 288 F.3d at 702. In the underlying opinion, the Fifth Circuit held a "full and fair hearing is not a precondition to according § 2254(e)(1)'s presumption of correctness to state habeas court findings of fact." Valdez v. Cockrell, 274 F.3d 941, 951 (5th Cir. 2001) (emphasis added).

> [T]here does not appear to be any binding
> Supreme Court or Eleventh Circuit precedent on
> whether § 2254(d)(2) deference is conditioned
> on a state court having held an evidentiary
> hearing . . . . More broadly, the Supreme Court
> seems to have foreclosed a per se rule that a
> state court must conduct an evidentiary
> hearing to resolve every disputed factual
> question. . . . Thus, we conclude that an
> evidentiary hearing in state court cannot be
> a requirement for § 2254(d)(2) deference for
> all disputed factual issues in a state court
> proceeding.

Landers v. Warden, Atty. Gen. of Ala., 776 F.3d 1288, 1297 (11th Cir. 2015). In accordance with binding precedent, this Court must give appropriate deference to the relevant state court decision. Wilson, 138 S. Ct. at 1192.

## VI. Ineffective Assistance of Counsel

Petitioner claims he received the ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution. To demonstrate his trial counsel was ineffective, Petitioner must satisfy a rigorous two-prong test by showing (1) counsel's performance was deficient, meaning it fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 688, 692 (1984). Restated, a criminal defendant's Sixth Amendment right to effective assistance of counsel "is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (citing Wiggins v. Smith, 539 U.S.

510, 521 (2003); Strickland, 466 U.S. at 687). The prejudice prong requires a showing that there is a reasonable probability that, but for counsel's deficiencies, the result of the proceeding would have been different. Strickland, 466 U.S. at 695.

The two-prong Strickland test applies when a petitioner challenges his counsel's performance with respect to the entry of a guilty plea such that a petitioner still must demonstrate counsel's performance was deficient. Hill v. Lockhart, 474 U.S. 52, 58-59 (1985). To establish prejudice, however, a petitioner must show there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59.

Notably, there is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)).

When a petitioner claims his counsel was ineffective, "[r]eviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" Daniel v. Comm'r, Ala. Dep't of Corr.,

822 F.3d 1248, 1262 (11th Cir. 2016) (quoting Strickland, 466 U.S. at 689). When the "strong presumption" standard of Strickland is applied "in tandem" with the highly deferential AEDPA standard, a review of the state court's determination as to the "performance" prong is afforded double deference. Richter, 562 U.S. at 105.

Accordingly, the question for a federal court is not whether trial counsel's performance was reasonable, but "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id. If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," a federal court may not disturb a state-court decision denying the claim. Id. As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## VII. Findings of Fact & Conclusions of Law

### A. Ground One

Petitioner asserts his guilty plea was involuntary because he was mentally incompetent at the time. Petition at 10. Alternatively, Petitioner argues his counsel was ineffective for failure to request a competency hearing under the Florida Rules of Criminal Procedure. Id.[9] Petitioner raised these claims in ground one of his 3.850 motion, Ex. D-5 at 6.

---

[9] Respondents contend Petitioner's argument that counsel failed to request a competency hearing under the Florida Rules of Criminal Procedure presents solely a state-law issue. Response at 17. Petitioner presents his competency claim as a denial of

In its order, the trial court paraphrased Petitioner's first claim as follows:

> In light of [Petitioner's] mental illness, [he] was not able to fully comprehend his guilty plea and therefore the plea was involuntary. . . . Alternatively, the [Petitioner] alleges that his defense Counsel was ineffective by failing to properly evaluate and argue that [he] was incompetent to enter a guilty plea and failing to request a hearing pursuant to [Florida Rule of Criminal Procedure] 3.210.

D-3 at 2. The trial court found the record conclusively refuted Petitioner's assertions. Ex. D-3 at 4.

As to Petitioner's claim of incompetency, the trial court referenced the plea transcript, which the court found revealed the following:

> [Petitioner] had no criminal history, was a gainfully employed artist, was married, understood the English language, was not under the influence of any alcohol or intoxicant, had never been found incompetent or mentally challenged, understood the rights he was giving up in his plea agreement, understood that he would be subject to deportation, understood the sexual offender registration and monitoring requirements, was satisfied with the representation of his attorney, and that <u>there was simply no indication of any mental incompetency</u>.

---

effective assistance of counsel, invoking the Sixth Amendment. Therefore, his claim is cognizable under § 2254.

Id. at 4 (emphasis added). The trial court further found Petitioner's claim that counsel was ineffective for failing to request a competency hearing was without merit. Id.

The Fifth District Court of Appeal (DCA) affirmed without opinion. Ex. M. To the extent the Fifth DCA affirmed the trial court's denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. See Wilson, 138 S. Ct. at 1194. As such, the Court will "look through" the unexplained opinion to the trial court's order on Petitioner's 3.850 motion. Id.[10] The trial court's factual findings are presumed correct unless Petitioner overcomes the presumption with clear and convincing evidence. See § 2254(e).

After a review of the record and the applicable law, the Court concludes the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on this claim.

---

[10] In looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

Even if the state court finding is not entitled to deference, Petitioner's claim fails. A habeas petitioner who asserts he was tried or convicted while he was incompetent raises a substantive due process claim. James v. Singletary, 957 F.2d 1562, 1571-72 (11th Cir. 1992). "It has long been established that the conviction of an incompetent defendant denies him or her the due process of law guaranteed in the Fourteenth Amendment." Id. at 1573. To succeed on a substantive competency claim, a petitioner must demonstrate by a preponderance of the evidence that he was in fact incompetent at the relevant time. Medina v. Singletary, 59 F.3d 1095, 1106 (11th Cir. 1995); see also Johnston v. Singletary, 162 F.3d 630, 637 n.7 (11th Cir. 1998).

The relevant standard for assessing a criminal defendant's mental competency is set forth in Dusky v. United States, 362 U.S. 402, 402 (1960). The Dusky standard requires a court to determine whether a defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." Id. See also Godinez v. Moran, 509 U.S. 389, 401-02 (1993) (holding the Dusky standard similarly applies in the context of guilty pleas). To demonstrate actual incompetence, a petitioner's burden is exceedingly high. Sheley v. Singletary, 955 F.2d 1434, 1438 (11th Cir. 1992). "Courts in habeas corpus proceedings should not consider claims of mental

incompetence [to enter a plea] where the facts are not sufficient to positively, unequivocally, and clearly generate a real, substantial, and legitimate doubt as to the mental capacity of the petitioner." Id. (quoting Reese v. Wainwright, 600 F.2d 1085, 1091 (5th Cir. 1979)). When a petitioner contends he was substantively incompetent to enter a plea, he is entitled to an evidentiary hearing only "upon a presentation of 'clear and convincing evidence [raising] a substantial doubt' as to his or her competency." James, 957 F.2d at 1572 (quoting Fallada v. Dugger, 819 F.2d 1564, 1568 (11th Cir. 1987)).

Whether a petitioner has the present ability to consult with his lawyer and understand the proceedings may be gleaned from hearing and trial transcripts: "The best evidence of [a petitioner's] mental state . . . is the evidence of his behavior" at the relevant time, such as during trial or during a plea hearing. See Wright v. Sec'y for Dep't of Corr., 278 F.3d 1245, 1259 (11th Cir. 2002). A petitioner must do more than simply assert he has low intelligence or was suffering from a mental deficiency at the time:

> "[N]ot every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges." Similarly, neither low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial.

Medina, 59 F.3d at 1107 (internal citations omitted). In Wright, the court held the petitioner failed to carry his heavy burden even though he had been declared incompetent to stand trial seventeen years previously, he pled not guilty by reason of insanity in the underlying criminal case, and expert witnesses testified (in support of his insanity plea) that he was "actively psychotic" at the time he committed the crime. Id.

The court reasoned the petitioner, at the relevant times, acted "perfectly normal," communicated with others, including his attorney, and understood the charges. Id. As such, the court found immaterial that, months after his trial in the underlying case, the defendant was declared incompetent to stand trial on subsequent charges. Id. n.4. See also Medina, 59 F.3d at 111 (finding relevant that petitioner coherently testified at trial and at sentencing, spoke "rationally and with understanding," and when he acted out during trial, responded appropriately to the judge's reprimands); Sheley, 955 F.2d at 1438 (holding the petitioner failed to carry his heavy burden where the trial judge's questioning of him showed "verbal coherence" even though the petitioner claimed he had taken psychotropic medication on the day of the plea and he had a history of mental illness).

Here, Petitioner has not met his high burden to demonstrate by a preponderance of the evidence he was incompetent when he entered his guilty plea. See Medina, 59 F.3d at 1106. The record

demonstrates Petitioner was able to communicate with his attorney and the judge; understood the judge's questions, the charges against him, and the waiver of rights associated with his plea; exhibited no confusion; and responded appropriately when the judge asked him questions. Ex. A at 10-11. Petitioner chose, through "the decision-making process," to plead guilty and understood his plea resulted in the waiver of certain rights and could result in his deportation. Id. at 6, 7. Petitioner's rational and appropriate responses, and his full and lucid participation in the plea proceeding, demonstrate Petitioner's reasonable degree of rational understanding of the proceedings.

Petitioner's reliance on Storey v. State, 32 So. 3d 105 (Fla. 2d DCA 2009), is misplaced. See Petition at 12. In Storey, the state appellate court remanded the case to the trial court to conduct an evidentiary hearing, finding the plea colloquy did not clearly refute the petitioner's claim of incompetency. Storey, 32 So. 3d at 107. Petitioner here argues the plea colloquy similarly did not refute his claim of incompetency and he, therefore, should have been afforded an evidentiary hearing. Petition at 12.

Importantly, it is not the province of this Court to review whether the trial court should have held an evidentiary hearing on Petitioner's 3.850 motion. This Court's review is limited to whether the trial court's findings were contrary to or involved an unreasonable application of federal law. § 2254(d). Here, as

discussed, the state court's conclusion that counsel satisfied the Strickland standard is supported by the record. And the plea colloquy demonstrates Petitioner was competent to enter a guilty plea. Based on the record, Petitioner decidedly had the ability to consult with his lawyer and understand the plea proceedings.

Petitioner's only proffered evidence of his alleged incompetence is the opinion of neuropsychologist Dr. Ginart. Dr. Ginart's opinion does not "positively, unequivocally, and clearly generate a real, substantial, and legitimate doubt as to the mental capacity" of Petitioner at the time he entered his guilty plea. Sheley, 955 F.2d at 1438. First, Dr. Ginart concludes Petitioner, "at the time of the evaluation," functioned at the "[e]xtremely [l]ow range of functioning," and prior to Petitioner's legal problems, he "was not considered to be much higher than just above the upper level of the [m]ild [m]ental [r]etardation range (i.e., in the lower end of the [b]orderline range of functioning." Petition at 26. Mild mental retardation, however, does not equate to incompetency under the Dusky standard. See Medina, 59 F.3d at 1107 ("[N]ot every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges.").

Second, Dr. Ginart explains Petitioner "suffered a mild traumatic head injury during his childhood." Petition at 26. But Dr. Ginart does not explain the nature of the injury or its effects

on Petitioner at the time of the plea hearing. In fact, Dr. Ginart offers no explanation as to how Petitioner's head injury impacted Petitioner at all. Instead, Dr. Ginart explains in general terms how "[v]ictims of mild head injuries" are impacted by such conditions and react to stressors. Id.

Finally, and most importantly, Dr. Ginart concludes Petitioner "was cognitively, intellectually, and psychiatrically incompetent to enter a plea (on his own), under stress/duress without adequate legal representation." Id. (emphasis added). Petitioner was represented by counsel who explained the nature of the charges, the rights Petitioner waived by entering a plea, and potential consequences of his plea, including possible deportation. Ex. A at 9-11. Aside from Petitioner's assertion that his counsel failed to request a competency hearing, there is no suggestion Petitioner was denied adequate legal representation. In fact, the trial judge stated Petitioner's counsel provided "excellent representation[]." Ex. A at 17, 25. Considering the circumstances under which Petitioner entered his guilty plea (with counsel), Dr. Ginart's opinion can be interpreted to imply Petitioner was competent at the time.

In short, Dr. Ginart does not conclude that on the day Petitioner entered his plea, he exhibited neurological problems such that he was unable to understand the proceedings or aid in his defense. Nor could Dr. Ginart have reached such a conclusion

because his opinion was based on an evaluation of Petitioner after the fact,[11] and there is no indication Dr. Ginart reviewed the plea transcript or mental health/medical records generated close in time to the plea hearing. Indeed, Dr. Ginart states his opinion is based solely on the results of a neuropsychological evaluation he administered. See Petition at 26.

To the extent Petitioner may have demonstrated cognitive impairments or limitations at the time Dr. Ginart examined him, there is nothing in the record to demonstrate Petitioner was incompetent under the Dusky standard at or near the time he entered his plea. See Wright, 278 F.3d at 1259 (holding the defendant's declared incompetence seven months after trial was "not enough to counter the best evidence of what his mental condition was at the only time that counts," which was the time of the proceedings against him). Upon review of the plea transcript, Petitioner demonstrated a "sufficient present ability to consult with his lawyer . . . [and] he had a rational as well as factual understanding of the proceedings against him." Id. at 1257 (quoting Dusky, 362 U.S. at 402).

---

[11] The date of the neurological examination and the date on which Dr. Ginart rendered his opinion are unknown because Dr. Ginart's letter is undated. However, it is undisputed Dr. Ginart's examination was conducted after the plea hearing and in aid of Petitioner's postconviction proceedings. See Petition at 10; Ex. D–5.

A claim of ineffective assistance for counsel's failure to request a competency hearing requires a petitioner to demonstrate both deficient performance and prejudice under the _Strickland_ standard. As with other _Strickland_ claims, a counsel's performance is presumed reasonable; a petitioner must show "counsel's representation fell below an objective standard or reasonableness." _Lawrence v. Sec'y, Fla. Dep't of Corr._, 700 F.3d 464, 477 (11th Cir. 2012) (quoting _Strickland_, 466 U.S. at 688). Under the prejudice prong, however, a petitioner must show "there was a reasonable probability that he would have received a competency hearing _and_ been found incompetent had counsel requested the hearing." _Id._ at 479 (emphasis in original). Under this standard, the prejudice prong of the ineffective assistance claim demands the same showing as that under a substantive competency claim. Under both claims, a petitioner must demonstrate he was actually incompetent at the time of the plea. _Id._ As such, the evidence supporting a substantive competency analysis is "largely the same" as the evidence supporting an ineffective-assistance-of-counsel analysis. _Id._ at 481-82.

Even when a defendant exhibits some questionable behavior during the proceedings and has a history of mental issues, a trial counsel's "decision not to request a competency hearing [is] within [counsel's] reasoned professional judgment." _Id._ at 477-78. For instance, in _Lawrence_, the defendant, who had "some limitations in

his functioning," pleaded guilty. The court accepted his guilty plea after counsel represented the defendant understood the proceedings. Id. at 467. During the penalty phase, the defendant reported having flashbacks and asked to be excused from the courtroom during certain testimony. Id. at 469.

The court held trial counsel's decision not to request a competency hearing was reasonable even though trial counsel admitted at the postconviction evidentiary hearing that, in hindsight, she erred by not requesting a competency evaluation of her client. Id. at 478. The court noted trial counsel's performance is to be viewed objectively, and counsel's after-the-fact self-critique carried little weight. Id. The court found significant that trial counsel did not state the defendant "was ever unable to communicate with [her] or assist . . . in his defense." Id. Additionally, after the defendant reported hallucinating, the trial court engaged the defendant in a lengthy discussion, after which trial counsel concluded the defendant was simply having a "bout with his conscience." Id. Accordingly, the court held trial counsel's decision not to request a competency hearing "did not fall below an objectively reasonable standard of performance." Id. at 478-79.

With respect to the prejudice (actual incompetency) prong, the court held the state court's determination was not an unreasonable application of Strickland, even though two mental

health experts testified at the postconviction evidentiary hearing (five years after the plea) that the defendant was incompetent at the time of his plea and during the penalty phase. Id. at 472, 479, 480. The court reasoned, in part, that the plea colloquy with the defendant and trial counsel demonstrated the defendant understood the proceedings and entered his plea willingly. Id. at 479. The court held as follows:

> While the state trial court did not make a specific competency finding, the trial court's detailed colloquy, [the petitioner's] rational and consistent responses to the trial court's questions, and the state trial court's findings that [the petitioner's] guilty plea was knowing and voluntary nonetheless support the reasonableness of the Florida Supreme Court's conclusion on Strickland prejudice.

Id.

Here, Petitioner fails to demonstrate his counsel performed deficiently. Petitioner offers no evidence to show a reasonably competent attorney would have questioned his competence to enter a plea. Indeed, nothing in the record even hints at a possible competency issue before or at the time Petitioner entered his plea. The first time a competency issue arose was during Petitioner's postconviction proceedings when Dr. Ginart evaluated him. There is no indication defense counsel knew Petitioner sustained a head injury when he was a child or functioned at a low level of intellectual ability. Even if counsel had known as much, these conditions do not speak to incompetency at the relevant time, which

was when Petitioner entered his plea. See, e.g., Lawrence, 700 F.3d at 478-79.

Regardless of Petitioner's level of functioning at the post-plea neuropsychological examination conducted by Dr. Ginart, the plea colloquy demonstrates a reasonably competent attorney would have had no reason to question whether Petitioner had a rational, as well as factual understanding of his criminal proceedings. During the plea colloquy, Petitioner's counsel told the judge he spent time speaking with Petitioner, who counsel described as a good person, articulate, and educated, and the trial judge noted on the record that Petitioner's attorney "indicated [Petitioner was] competent." Ex. A at 15, 24, 34. There is nothing to indicate Petitioner struggled to comprehend the proceedings or had difficulty communicating or understanding, which would have put his attorney on notice of a competency concern. Defense counsel stated he explained the strength of the state's case to Petitioner, and Petitioner chose, through "the decision-making process," to plead guilty rather than have his attorney take depositions. Id. at 24, 25.[12]

---

[12] It is worth highlighting Petitioner received an extremely lenient sentence as a result of his guilty plea. The judge sentenced him to six months in jail followed by three years of probation. Ex. A at 78. At the plea proceedings, Petitioner's counsel expressed the strength of the state's case against Petitioner. Id. at 6. If convicted, Petitioner faced a minimum of 84 months in prison. Id. at 78. Not only did Petitioner receive a much lighter sentence than the minimum under the sentencing

Even assuming counsel acted deficiently, Petitioner cannot meet the high threshold of prejudice because he fails to demonstrate he was incompetent when he entered his plea, as analyzed in detail above. Petitioner does not allege he suffered from mental conditions or illnesses that are associated with "incompetency" under Dusky; he offers no evidence of a history of mental illness or documentation of such; and there is no evidence Petitioner was receiving or had received treatment for a mental illness. Indeed, at the plea hearing, Petitioner denied ever having been "found to be insane, incompetent, or mentally challenged." Ex. A at 10.

In sum, considering the totality of the circumstances surrounding Petitioner's plea, Petitioner fails to carry his heavy burden to demonstrate he was actually incompetent at the time he entered his guilty plea. As such, he concomitantly fails to demonstrate counsel's alleged deficient performance prejudiced his defense.

### B. Ground Two

In ground two, Petitioner claims his counsel was ineffective for his failure to move to dismiss the attempted lewd or lascivious battery charge (count four). Petition at 17. Petitioner contends an element of that offense requires the victim be of a certain

---

scoreshet, but the sentence was even lower than what the state had offered Petitioner, which was a prison sentence. Id. at 17.

age, and the victim was undisputedly outside the statutory age-range. Id. Respondents argue Petitioner cannot demonstrate deficient performance because Petitioner was charged with attempt, not a completed offense. Response at 22-23. Additionally, Respondents maintain, Petitioner cannot demonstrate prejudice because the state's case against him was strong, and Petitioner received an "extremely lenient downward departure sentence" under his plea agreement. Id. at 23-24.

Petitioner exhausted this claim in ground two of his postconviction motion, Ex. D-5 at 8, and by appealing the trial court's order to the Fifth DCA, Ex. H at 1; Ex. I at 12. The Fifth DCA affirmed the trial court's decision without opinion. Ex. M. Under Wilson, this Court presumes the Fifth DCA adopted the reasoning of the trial court, and the state has not attempted to rebut this presumption. See 138 S. Ct. at 1192. As such, the Court will "look through" the unexplained opinion to the trial court's order on Petitioner's 3.850 motion. Id.

In its order denying Petitioner's motion for postconviction relief, the trial court set forth the applicable two-prong Strickland test. Ex. D-3 at 3, 5-6. In denying ground two of Petitioner's postconviction motion, the trial court found the primary authority upon which Petitioner relied was inapposite. Id. at 5 (citing Pamblanco v. State, 111 So. 3d 249, 252 (Fla. 5th DCA 2013)). The trial court recognized Pamblanco stands for the

proposition that "for the completed offense of solicitation of a child under the age of sixteen to commit lewd or lascivious conduct, the request must be made to someone under sixteen." Ex. D-3 at 5. The trial court also acknowledged the "victim" in Petitioner's case was actually an undercover officer and therefore over the age of sixteen. Id. However, the court continued, Petitioner was charged with "attempted" lewd/lascivious conduct, and "Pamblanco makes clear that the holding does not apply to 'attempted' lewd/lascivious charges." Id. The trial court further stated, "[e]ven if the sentence . . . is eventually vacated as illegal, there is no showing that confidence in the outcome, based on the remaining charges, is undermined." Id. at 5-6.

Upon review, the record demonstrates the trial court properly applied the Strickland standard and found no deficient performance on the part of counsel and no prejudice to Petitioner's defense. As such, Petitioner is unable to establish the state court's decision is inconsistent with Supreme Court precedent, including Strickland, or is based on an unreasonable determination of the facts. Under AEDPA's deferential standard, Petitioner is not entitled to habeas relief on ground two.

## C. Ground Three

In ground three, Petitioner asserts his convictions on an Information charging both "solicitation" and "traveling" under two subsections of Florida Statutes section 847.0135 (subsections

33

(3)(a) and (4)(a)) violate double jeopardy because those charges were based on the same conduct. Petition at 18-19. Petitioner states the postconviction court's reasoning, in denying this ground, has since been rejected by the Second DCA in Shelley v. State, 134 So. 3d 1138, 1141-42 (Fla. 2d DCA 2014).[13] Respondents contend Petitioner's "negotiated guilty plea waived any double jeopardy claims regarding his convictions." Response at 25.

Petitioner exhausted this claim in ground three of his postconviction motion, Ex. D-5 at 10, and by appealing the trial court's order to the Fifth DCA, Ex. H at 1; Ex. I at 12. The Fifth DCA affirmed the trial court's decision without opinion. Ex. M. In its order denying Petitioner's motion for postconviction relief,[14] the trial court found Petitioner's "convictions under subsection[s] (3)(a) and (3)(b) were for separate offenses; thus, no double jeopardy violations occurred." Ex. G at 3-4. The record shows the Fifth DCA affirmed the decision of the trial court in denying this ground. Ex. M. Under Wilson, this Court presumes the

---

[13] Significantly, the Shelley opinion was decided in 2014, after Petitioner was charged (July 16, 2012) and after he entered his plea (August 19, 2013).

[14] The trial court addressed the double jeopardy claim in its final order on Petitioner's 3.850 motion after directing the state to respond to the issue. Ex. D-2. The trial court's initial order on Petitioner's postconviction motion addressed his alternative ground for relief, ineffective assistance of counsel for failure to move to dismiss the duplicative count in the Information. Ex. D-5 at 10. Petitioner has not asserted ineffective assistance of counsel in ground three in his Petition before this Court.

34

Fifth DCA adopted the reasoning of the trial court, and the state has not attempted to rebut this presumption. <u>See</u> 138 S. Ct. at 1192. As such, the Court will "look through" the unexplained opinion to the trial court's order on Petitioner's 3.850 motion. <u>Id.</u>

After a review of the record and the applicable law, the Court concludes the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on this claim.

Even if the state court finding is not entitled to deference, Petitioner's claim fails. The Supreme Court makes clear that a defendant who voluntarily and with counsel's advice pleads guilty to criminal charges waives his right to contest the conviction on double jeopardy grounds. <u>United States v. Broce</u>, 488 U.S. 563, 569 (1989).

> A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence. Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily whether the underlying plea was both counseled and voluntary.

*Id.* A guilty plea is not only a confession but a recognition that the defendant committed the substantive crimes in the charging document. *Id.* at 570. In *Broce*, the defendants argued their convictions violated double jeopardy because they engaged in only one conspiracy but entered guilty pleas to two separate charges of conspiracy, as alleged in the indictment. *Id.* at 565, 570. The Court held their pleas resulted in a waiver of such a collateral attack even though their attorney did not discuss double jeopardy issues with them beforehand. *Id.* at 572, 573. While the defendants may have "made a strategic miscalculation," their pleas were entered voluntarily and freely and with the advice of counsel. *Id.* at 574. The Court held, "[r]elinquishment [of the right to object on double jeopardy grounds] derives not from any inquiry into a defendant's subjective understanding of the range of potential defenses, but from the admissions necessarily made upon entry of a voluntary plea of guilty." *Id.* at 573-74.

Upon review of the applicable law and the record, the Court finds Plaintiff freely and voluntarily entered his plea with the assistance of competent counsel, thus waiving his right to collaterally attack his conviction on double jeopardy grounds. *See id.* at 565, 570. Importantly, Petitioner does not contest the voluntariness of his plea, and the plea colloquy demonstrates his plea was in fact voluntarily entered. Petitioner specifically acknowledged he was waiving certain rights, which were explained

by his attorney and the judge; he confirmed he wished to proceed with the plea under the factual predicate provided by the judge and on his attorney's representations that Petitioner understood the consequences of his plea; he acknowledged his plea would result in his being labeled a sexual offender and could subject him to deportation; he agreed his attorney answered all his questions; and he affirmed he was not under the influence of any intoxicants at the time. Ex. A at 9-10, 14, 15. Petitioner's solemn declarations in court carry a strong presumption of truth. Blackledge v. Allison, 431 U.S. 63, 74 (1977); see also Winthrop-Redin v. United States, 767 F.3d 1210, 1217 (11th Cir. 2014) (recognizing statements made under oath at a plea colloquy are presumed true). Thus, Petitioner's representations that he understood the plea agreement and the rights he was giving up "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge, 431 U.S. at 73-74.

The Broce Court acknowledged an exception to the general rule "barring collateral attack on a guilty plea," which narrowly applies when a presiding trial judge should have determined the charge, on the face of the charging document, was not one the state could constitutionally prosecute. 488 U.S. at 574, 575. In Broce, the exception did not apply because the defendants pleaded guilty to "indictments that on their face described separate conspiracies." Id. at 576. See also Dermota v. United States, 895

F.2d 1324, 1325, 1326 (11th Cir. 1990) (holding the defendant's voluntary and counseled guilty plea waived a double jeopardy challenge because the indictment described separate offenses and the prosecutor "unquestionably [was] entitled to prosecute simultaneously" for both charges even though a conviction under both charges may have violated double jeopardy).

The exception to the general rule of waiver recognized by the Broce Court does not apply here. There is no indication on the face of the Information the charges were not ones the state could constitutionally prosecute. 488 U.S. at 575. The Information charged separate offenses against Petitioner. Ex. A at 38. Count one charged Petitioner with "use of internet or device to lure a child" under section 847.0135(3) and count three charged Petitioner with "traveling to meet minor for illegal sexual conduct" under section 847.0135(4)(a). Each charge named a seemingly different victim: count one referenced a victim named "Tiffany Wright," and count three referenced a victim named "Jenny." Id.

Even though Tiffany Wright and Jenny were in fact references to the same fictitious child,[15] the Information, to which Petitioner pleaded guilty, identified two separate charges against different victims. Id. The victims were not described as the same

_____

[15] The record is clear Petitioner believed he was traveling to meet one child, not two. Ex. A at 28-29.

person in the Information. That the trial judge, during the plea colloquy, referenced the victim(s) as "Jenny or Tiffany or somebody else" suggests it was not readily apparent the two charges referenced the same victim. Ex. A at 12-13. There is also no indication the Information on its face was constitutionally infirm.[16]

The state court opinion upon which Petitioner heavily relies does not entitle Petitioner to federal habeas relief. See Shelley v. State, 134 So. 3d 1138, 1141-42 (Fla. 2d DCA 2014). The Shelley court held a conviction under both subsections (3)(a) and (4)(a), when based upon the same transaction, violates double jeopardy: "[D]ual convictions for soliciting and traveling in the course of one criminal transaction or episode violate the prohibition against double jeopardy." Id. The defendant in Shelley entered a guilty plea, but explicitly reserved his right to, and did, appeal the trial court's denial of his motion to dismiss the duplicative charges as violating double jeopardy. Id. at 1139. Petitioner here

---

[16] Petitioner seemingly invokes the limited exception recognized by Broce, though he relies upon a Florida Supreme Court decision instead. See Petition at 18 n.12; Reply at 7 (citing Novaton v. State, 634 So. 2d 607 (Fla. 1994)). Petitioner argues that because his plea was an "open" plea, not a "negotiated" plea, he did not waive his right to later object on double jeopardy grounds. The binding precedent does not distinguish between an open or a negotiated plea, however. Broce, 488 U.S. at 574; Dermota, 895 F.2d at 1325. Rather, as the Supreme Court held, the "inquiry is . . . confined to whether the underlying plea was both counseled and voluntary." Broce, 488 U.S. at 569. As discussed, Petitioner's plea was both counseled and voluntary.

did no such thing; on the contrary, he explicitly waived his rights when he entered his plea. Ex. A at 9-11, 14-15.

Additionally, the Shelley court acknowledged, "convictions for both soliciting and traveling may be legally imposed in cases in which the State has charged and proven separate uses of computer devices to solicit." Shelley, 134 So. 3d at 1142. The record here suggests the prosecutor may have been able to prove "separate uses of computer devices to solicit," which would have resulted in "legally imposed" convictions under both subsections. Id. For instance, the search warrant authorized the search of two mobile phones and a digital storage device, all of which were seized from Petitioner's possession upon his arrest. Ex. A at 65. The trial court, in its final order on Petitioner's 3.850 motion, noted Petitioner used the devices to exchange 117 text messages, 16 phone calls, and numerous emails with the supposed parent of a 13-year-old girl. Ex. G at 3.

Moreover, at the early stage of the proceedings when Petitioner pleaded guilty, the prosecutor's theory was premised, in part, on the solicitation and the traveling offenses occurring on different days, see Ex. K at 15, which could have supported convictions under both subsections of the statute. See Shelley, 134 So. 3d at 1142 (citing with approval cases that held convictions for both soliciting and traveling are lawful if based on conduct that occurred on different dates).

Whether the prosecutor would have been able to prove the separate violations against Petitioner is a different inquiry than whether Petitioner freely and voluntarily entered a plea to the Information, which charged him under both subsections (3)(a) and (4)(a). See Dermota, 895 F.2d at 1325 (distinguishing the case on the facts because in the precedent upon which the defendant relied, the defendant was convicted of the two offenses, which the court held violated double jeopardy, while the defendant in Dermota pleaded guilty).

To the extent the facts were not fully developed when Petitioner entered his plea, he expressly waived his right to object based on double jeopardy principles. Broce, 488 U.S. at 572. Petitioner may not now "withdraw his plea merely because he [has] discover[ed] . . . that his calculus misapprehended the quality of the State's case. . . . [A] voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." Id. at 572. For these reasons, Petitioner is not entitled to relief on ground three.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.   The Petition (Doc. 1) is **DENIED.**

2.   This action is **DISMISSED WITH PREJUDICE.**

3. The **Clerk** shall enter judgment accordingly and close this case.

4. If Petitioner appeals the denial of his Petition, **the Court denies a certificate of appealability**.[17] The **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 23rd day of September, 2019.

_____
BRIAN J. DAVIS
United States District Judge

Jax-6
c:
Counsel of Record

---

[17] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Upon due consideration, this Court will deny a certificate of appealability.